IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARY A. BRADEN            :

   v.                        :   Civil Action No. DKC 19-1179

JH PORTFOLIO DEBT EQUITIES, LLC :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this consumer debt collection case are the motion for default judgment, (ECF No. 12), and the motion for attorney's fees filed by Plaintiff Mary A. Braden, (ECF No. 13). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for default judgment will be granted in part and denied in part, and the motion for attorneys' fees will be granted.

**I. Factual Background**

In her complaint and attached documents, Plaintiff alleges that she had an account with Citibank and that Citibank attempted to collect a debt which it believed she owed it. To represent her with respect to this debt and any claims on it, Ms. Braden retained Wendell Finner PC. Ms. Braden informed Citibank of the representation and requested Citibank to cease all direct contact with her. JH Portfolio Debt Equities, LLC ("Defendant") then

acquired Ms. Braden's debt to Citibank. Next, Defendant's agent, D&A Services ("D&A") contacted Ms. Braden's attorney, who informed D&A that Ms. Braden disputed the debt claimed by Defendant. Finally, Defendant sent a letter to Ms. Braden at her home attempting to collect the debt and demanding payment of $41,191.87.

## II. Procedural Background

On April 23, 2019, Plaintiff filed a complaint against Defendant alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692c, the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code, Com. L. Art. 14-202(6), and the Maryland Consumer Protection Act ("MCPA"), Md. Code, Com. L. Art. § 13-301(14). (ECF No. 1). Defendant was served with a summons and copy of the Complaint on June 4, 2019. (ECF No. 7). Plaintiff filed proof of service, (ECF No. 4), and moved for Clerk's Entry of Default, (ECF No. 5), on June 26, 2019. The clerk entered default on July 10, 2019, (ECF No. 8), and Plaintiff moved for Default Judgment, (ECF No. 12), and Attorney's Fees and Costs, (ECF No. 13), on December 2, 2019. Those motions are unopposed.

## III. Standard of Review

Under Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A defendant's default does not automatically entitle the plaintiff

2

to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Lewis v. Lynn,* 236 F.3d 766, 767 (5th Cir. 2001). The United States Court of Appeals for Fourth Circuit has a "strong policy" that "cases be decided on their merits," *Dow v. Jones,* 232 F.Supp.2d 491, 494 (D.Md. 2002) (citing *United States v. Shaffer Equip. Co.,* 11 F.3d 450, 453 (4th Cir. 1993)), but default judgment may be appropriate where a party is unresponsive, *see S.E.C. v. Lawbaugh,* 359 F.Supp.2d 418, 421 (D.Md.2005)(citing *Jackson v. Beech,* 636 F.2d 831, 836 (D.C. Cir. 1980)).

"Upon [entry of] default, the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not." *Lawbaugh,* 359 F.Supp.2d at 422. While the court may hold a hearing to consider evidence as to damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins v. Teseo,* 180 F.Supp.2d 15, 17 (D.D.C., 2001) (citing *United Artists Corp. v. Freeman,* 605 F.2d 854, 857 (5th Cir. 1979)).

**IV. Analaysis**

**A. The FDCPA Claims**

In evaluating a request for a default judgment, the court must, accepting all factual allegations in the complaint as true, determine if the complaint adequately states a claim. *See Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 780 (4th Cir. 2001). The

Fourth Circuit has established that "the threshold requirement for application of the [FDCPA] is that prohibited practices are used in an attempt to collect a debt." *Mabe v. G.C. Servs. Ltd. P'ship,* 32 F.3d 86, 87–88 (4th Cir.1994).

Taken as true, Plaintiff's allegations adequately state a claim for relief under the FDCPA: the debt collector knew Ms. Braden was "represented by an attorney with respect to [her] debt," but nonetheless communicated directly with Ms. Braden in connection with the collection of that debt. 16 U.S.C. § 1692c(a)(2).

Less apparent, however, is the amount of damages Ms. Braden is owed. While the court may rely on "detailed affidavits or documentary evidence to determine the appropriate sum," *Adkins*, 180 F.Supp.2d at 17, Ms. Braden's affidavit regarding her damages is far from detailed. In her statement, Ms. Braden writes that she was "shocked and stunned" upon hearing that she owed nearly $50,000, and that "[f]or several weeks [she] could not restfully sleep and [she] lost [her] appetite." (ECF No. 12-1, at 1-2). Ms. Braden further suggests that because she "would gladly pay the sum of $4,000.00 not to have to experience such suffering. . . [she] respectfully advise[s] the court that $4,000.00 is the value of the distress [she] experienced." (*Id.* at 2).

The Fourth Circuit has not addressed what constitutes a sufficient showing of emotional distress as to warrant damages

4

under the FDCPA.  The Fourth Circuit has, however, addressed that issue with regard to similar statutes:

> Our previous cases establish the type of evidence required to support an award for emotional damages. We have warned that "[n]ot only is emotional distress fraught with vagueness and speculation, it is easily susceptible to fictitious and trivial claims." . . . For this reason, although specifically recognizing that a plaintiff's testimony can provide sufficient evidence to support an emotional distress award, we have required a plaintiff to "reasonably and sufficiently explain the circumstances of [the] injury and not resort to mere conclusory statements." . . . Thus, we have distinguished between plaintiff testimony that amounts only to "conclusory statements" and plaintiff testimony that "sufficiently articulate[s]" true "demonstrable emotional distress." . .
>
> In *Knussman v. Maryland*, 272 F.3d 625 (4th Cir. 2001), we summarized the factors properly considered in determinating [sic] the potential excessiveness of an award for emotional distress. They include the factual context in which the emotional distress arose; evidence corroborating the testimony of the plaintiff; the nexus between the conduct of the defendant and the emotional distress; the degree of such mental distress; mitigating circumstances, if any; physical injuries suffered due to the emotional distress; medical attention resulting from the emotional duress; psychiatric or psychological treatment; and the loss of income, if any.

*Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 503 (4th Cir. 2007) (internal citations omitted)(interpreting the Fair Credit Reporting Act, 15 U.S.C.A. § 1681 *et seq.*).

Taking the above factors in turn: there is no evidence to corroborate Ms. Braden's claim of emotional distress; Ms. Braden's emotional distress appears to be related as much to her actually potentially owing a debt – something she was aware of irrespective of Defendant's single letter to her – as it was to her receipt of a letter informing her she owed a debt; Ms. Braden describes a relatively mild form of mental distress in the form of lack of "restful" sleep and "loss of appetite"; the court is not aware of any mitigating circumstances; and Ms. Braden has submitted no evidence of physical injuries, psychiatric or psychological treatment, or the loss of income. While no binding, in-circuit precedent exists for these circumstances, Ms. Braden's conclusory allegations of actual damages are of a type that courts in this district have previously rejected in FDCPA cases. *See, e.g.*, *Dorris v. Account Receivable Management, Inc.*, 2013 WL 1209629 at *8 (D.Md. March 22, 2013).

As to statutory damages, the FDCPA grants courts discretion to award statutory damages in an amount not to exceed $1,000. 15 U.S.C. § 1692k(a)(2)(A). In awarding statutory damages, "the court must consider the frequency and persistence of [the debt collector's] noncompliance, the nature of such noncompliance, and the extent to which such noncompliance was intentional." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573,

578 (2010) (citing 15 U.S.C. § 1692k(b)) (internal quotation marks omitted).

"The maximum statutory damages award is only assessed in cases where there [have] been repetitive, egregious FDCPA violations and even in such cases, the statutory awards are often less than $1,000." *Thomas v. Smith, Dean & Assocs., Inc.*, No. 10-3441, 2011 WL 2730787, at *3 (D.Md. July 12, 2011) (quoting *Ford v. Consigned Debts & Collections, Inc.*, No. 09-3102, 2010 WL 5392643 at *5 (D.N.J. Dec. 21, 2010)) (awarding $500 in statutory damages where the defendant threatened imprisonment, contacted the plaintiff's employer, and called the plaintiff twice). In *Spencer v. Henderson-Webb, Inc.*, a court in this district awarded a plaintiff $1,000 in statutory damages because the defendant violated the FDCPA on six separate occasions. *Spencer*, 81 F.Supp.2d at 594. Even where the underlying behavior was much more severe than the behavior alleged by Plaintiff, other courts' awards of statutory damages did not approach the $1,000 maximum. *See, e.g.*, *Marchman v. Credit Solutions Corp.*, No. 10-226, 2011 WL 1560647, at *11 (M.D.Fla. April 5, 2011) (awarding $100 in statutory damages for violations of the FDCPA where the defendant called the plaintiff twice and threatened to contact the plaintiff's employer); *Pearce v. Ethical Asset Mgmt.*, No. 07-718S, 2010 WL 932597, at *6 (W.D.N.Y Jan. 22, 2010) (awarding $250 in statutory damages for violation of the FDCPA where the defendant left multiple voicemails

threatening to sue, inform the plaintiff's parole officer, and have the plaintiff thrown in jail). By contrast, the Fourth Circuit upheld an award of only $50 in statutory damages when the defendant was found to have engaged in one FDCPA violation that was, "at most a technical misstep." *See Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 627 (4th Cir. 1995).

In the present case, Plaintiff alleges only one violation of the FDCPA in which she received a brief letter from Defendant. Plaintiff does not allege that the violation was intentional or that Defendant acted in a threatening or aggressive manner. Given the limited extent of the communication and the lack of ill-intent, an award of statutory damages in the amount of $1,000 would be inappropriate. In light of awards in similar cases, an award of $50 is warranted.

**B. The State Law Claims**

Plaintiff also brings a claim under the MCDCA, specifically § 14-202(6) which forbids debt collectors from "[c]ommunicat[ing] with the debtor or a person related to him with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor[.]" Plaintiff has alleged a single incident of communication. The time of day was clearly not unusual as the communication came in the form of a letter, and there are no other circumstances which would lead the court to believe the Defendant's communication could reasonably be expected

to abuse or harass the debtor. Even when taken as true, plaintiff's allegations do not establish a violation of the MCDCA.

Ms. Braden also claims that Defendant violated the MCPA "[b]y violating the MDCPA[.]" Because Ms. Braden has failed to establish a violation of the MDCPA, her MCPA claim fails as well.

## V. Attorneys' Fees

The FDCPA provides for the recovery of reasonable attorneys' fees for successful plaintiffs. 15 U.S.C. § 1692k(a)(3). While an award of attorneys' fees is mandatory "in all but the most unusual circumstances," the district court has discretion to "calculate an appropriate award of attorneys' fees." *Carroll,* 53 F.3d at 628. In making that assessment, courts typically "use the principles of the traditional lodestar method as a guide." Poulin v. Gen. Dynamics Shared Res., No. 09-00058, 2010 WL 1813497, at *1 (W.D.Va. May 5, 2010)(quoting *Almodova v. City & Cnty. of Honolulu,* No. 07-00378, 2010 WL 1372298, at *7 (D.Haw. Mar. 31, 2010)). The lodestar amount is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. Robinson v. Equifax Information Services, LLC, 560 F.3d 235, 243 (4th Cir. 2009). The FDCPA does not mandate an award of attorneys' fees in the lodestar amount if the court finds it to be unreasonable. Carroll, 53 F.3d at 629.

In evaluating the reasonableness of the lodestar amount, this court uses "the twelve well-known factors articulated in Johnson

v. Georgia Highway Express, Inc., 488 F.2d 714, 717–719 (5th Cir. 1974) and adopted by the Fourth Circuit in Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978)." Thompson v. U.S. Dep't of Hous. & Urban Dev., No. 95-309, 2002 WL 31777631, at *6 (D.Md. Nov. 21, 2002). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* (citations and quotation marks omitted).

To assist in the evaluation of these factors, Local Rule 109(b) requires that a request for attorneys' fees be:

> supported by a memorandum setting forth the nature of the case, the claims as to which the party prevailed, the claims as to which the party did not prevail, a detailed description of the work performed broken down by hours or fractions thereof expended on each task, the attorneys' customary fee for such like work, the customary fee for like work prevailing in the attorneys' community, a listing of any expenditures for which reimbursement is sought, any additional factors which are required by the case law, and any additional factors that the attorney wishes to bring to the Court's attention.

Additionally, Appendix B requires the fee application to be broken down by both task and litigation phase. Appendix B also sets forth a guide for determining the reasonableness of an attorney's hourly rate, depending on how long the attorney has been a member of the bar.

Plaintiff has, for the most part, met these requirements and her motion for attorney's fees will be granted. Two items in Plaintiff's affidavit, however, do not constitute reasonable attorney's fees under the circumstances. Plaintiff has included .4 hours spent "reconfirm[ing their] representation" to Defendant and D&A. These hours were not billed in the course of bringing this action, and thus cannot be recouped. As such, the court will award $190 less in attorney's fees than Plaintiff has requested.

## VI. Conclusion

For the foregoing reasons, the motion for default judgment filed by Plaintiff Mary A. Braden will be granted in part and denied in part, and the motion for attorney's fees will be granted. A separate order will follow.

      /s/  
DEBORAH K. CHASANOW  
United States District Judge
